Filed 12/17/20  P. v. Baeza CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| THE PEOPLE, | B303344 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA170804) |
| v. | |
| GUSTAVO BAEZA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Larry P. Fidler, Judge.  Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Nima Razfar, Deputy Attorney Generals for Plaintiff and Respondent.

—————————————

Gustavo Baeza appeals from a postjudgment order summarily denying his petition for resentencing under Penal Code section 1170.95[1] as to his prior conviction of second degree murder. Because the jury was not instructed on felony murder or the natural and probable consequences doctrine, Baeza was not eligible for relief. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Killing*

We described the killing of Tommy Walker in our prior opinion in *People v. Baeza* (Mar. 19, 2001, B129838) [nonpub. opn.] (*Baeza I*): "[Bryant] Royal testified at trial that he was standing in his front yard with his friends Walker, Derrick Hudson, and Jose Nava when a car drove up. Royal did not see the car because he was tying his shoes. Hudson said, 'Run!' so Royal ran. Royal heard 15 or 16 gunshots, four of which struck Walker. [¶] Less than an hour after the shooting, Royal told Officer Roca that the gunman had a blue steel handgun and might be a member of the Loco Park gang. [¶] At the police station, Royal spoke to Detective Williams and wrote a statement in which he said that Walker was shot by the driver of a new-looking gold or tan truck that stopped in front of Royal's house. Royal wrote that the driver was 'Big Grumpy,' a Loco Park gang member whom he recognized from the neighborhood and a prior hostile confrontation. Royal described the shooter as Latino, six feet three inches tall, and weighing 220 to 230 pounds. There were two other Latino men in the truck." The parties stipulated

---

[1] All statutory references are to the Penal Code.

that Baeza was five feet 11 inches and weighed 230 pounds at the time of his arrest.  (*Baeza I, supra*, B129838.)

Royal initially testified at trial he told Detective Williams the truth, which the detective wrote down and Royal signed, but Royal later testified his written statement reflected what Detective Williams told him to write.  Detective Williams testified at trial she had no knowledge of the circumstances of the shooting other than that Royal was a witness, and she denied she told Royal what to write.  At trial Detective Pirro testified he and his partner also interviewed Royal, who identified Baeza as the shooter and codefendants Ramon Castellanos and Israel Diaz as the passengers in the truck.  Royal told Detective Pirro he had seen Baeza in the neighborhood about twice a week.  A gang card on file with the police department identified Baeza as "Grumpy."  An audio recording of Detective Pirro's interview of Royal was played for the jury.  Royal testified at trial he had told Detective Pirro and his partner what he heard from Hudson, and he made up the rest.  (*Baeza I, supra*, B129838.)

Two members of the Harpy gang, which was friendly with the Loco Park gang, were later apprehended with the handgun that was used to kill Walker.  Baeza, Castellanos, and Diaz had previously admitted they were members of the Loco Park gang, and Baeza had tattoos indicating his membership in the gang. (*Baeza I, supra*, B129838.)

Nava testified for the defense that he saw the shooting and Baeza, Castellanos, and Diaz were not involved.  Jissel Flores, the wife of Castellanos, testified that around the time of the shooting, she saw three men in a gold truck drive by her home, which was about three blocks from Royal's house.  One of the

3

men was her cousin, and none of the defendants was in the truck. (*Baeza I, supra*, B129838.)

B.    *The Trial Court's Jury Instructions, Baeza's Conviction, and the Appeal*

The trial court[2] instructed the jury with CALJIC No. 3.01 on aider and abettor liability; CALJIC Nos. 8.10 and 8.11 on murder with malice aforethought and express and implied malice; and CALJIC Nos. 8.20 and 8.30 on first and second degree murder.[3]  The trial court did not instruct the jury on either felony murder or the natural and probable consequences

---

[2]    Judge James M. Ideman.  Judge Ideman had retired from the Los Angeles Superior Court by the time Baeza filed his petition for resentencing.

[3]    On September 9, 2020 the People filed a request for judicial notice asking this court to take judicial notice of the appellate record in *Baeza I*.  We construed the request as a motion to augment the record on appeal, which we granted.  The court's instruction on aider and abettor liability (CALJIC No. 3.01) provided a person must act "with the intent or purpose of committing or encouraging or facilitating the commission of the crime . . . ."  The court's instruction on implied malice (CALJIC No. 8.11) provided, "Malice is implied when:  [¶]  1. The killing resulted from an intentional act;  [¶]  2. The natural consequences of the act are dangerous to human life; and  [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life."  The court's instruction on second degree murder (CALJIC No. 8.30) defined the crime as "the unlawful killing of a human being with malice aforethought when the perpetrator intended unlawfully to kill a human being but the evidence is insufficient to prove deliberation and premeditation."

doctrine. The jury found Baeza guilty of second degree murder (§ 187, subd. (a)) and found true the allegations Baeza personally used a firearm (§ 12022.5, subd. (a)) and a principal was armed with a firearm (§§ 12022, subd. (a)(1)). The trial court sentenced Baeza to 19 years to life in prison (15 years to life for second degree murder and the middle term of four years for the personal use of a firearm).

On appeal, Baeza argued there was insufficient evidence to show he was involved in Walker's murder; the trial court abused its discretion in admitting evidence of a prior shooting of Hudson; and Baeza was not brought to trial within the statutory deadline. We rejected Baeza's arguments and affirmed. As to the sufficiency of the evidence, we concluded "there was ample evidence upon which the jury could find beyond a reasonable doubt that [Baeza] shot Walker." (*Baeza I, supra*, B129838.)

C.    *Baeza's Petition for Resentencing*

On September 26, 2019 Baeza, representing himself, filed a form petition for resentencing and supporting declaration seeking to vacate his murder conviction and to be resentenced in accordance with recent statutory changes relating to accomplice liability for murder. In his petition, Carroll declared he "could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019"; he "was convicted of 2nd degree murder under the natural and probable consequences doctrine or under the 2nd degree felony murder doctrine and [he] could not now be convicted of murder because of changes to Penal Code § 188, effective January 1, 2019"; and "[t]here has been a prior determination by a court or jury that [he] was not a major participant and/or did

5

not act with reckless indifference to human life . . . ." Baeza did not check the box indicating he "was not the actual killer." Baeza requested the court appoint an attorney for him.

In his supporting declaration, Baeza pointed to evidence he was not the shooter, including testimony at trial from Nava, Wheeler, Hudson, Beatrice Reynoso, and Estella Reynoso "showing either that [Baeza] was not there at the scene, or the description of the shooter did not match [Baeza's] at the time of the shooting." Baeza attached the trial court's instruction on express and implied malice and a letter from Hudson, who did not testify at trial, stating Baeza was not the killer.

On November 5, 2019 the superior court summarily denied Baeza's petition for resentencing, explaining, "The jury heard evidence that the defendant was the actual shooter (this evidence was in a tape recorded interview played for the jury. The witness recan[t]ed his I.D. in front of the jury.) [¶] The court has conducted its prima facie review and finds that [Baeza] was found to be the actual shooter and is not eligible under [section] 1170.95 . . . ."

Baeza timely appealed.

## DISCUSSION

A. *Senate Bill No. 1437*

On September 30, 2018 Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) was signed into law, effective January 1, 2019. Senate Bill 1437 was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act

6

with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Sen. Bill 1437 (2017-2018 Reg. Sess.) § 1; see *People v. Verdugo* (2020) 44 Cal.App.5th 320, 325 (*Verdugo*), review granted Mar. 18, 2020, S260493; *People v. Perez* (2020) 54 Cal.App.5th 896, 902 (*Perez*), review granted Dec. 9, 2020, S265254.)

New section 188, subdivision (a)(3), provides, "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." Senate Bill 1437 also added section 189, subdivision (e), which provides, "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Senate Bill 1437 also provides a procedure in new section 1170.95 for an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder under Senate Bill 1437's changes to sections 188 and 189. (Sen. Bill 1437 (2017-2018 Reg. Sess.) § 4.) Section 1170.95,

subdivision (b)(1), provides that the petition "shall be filed with the court that sentenced the petitioner."  The petition must include a declaration by the petitioner stating he or she is eligible for relief under the section, providing the superior court case number and year of the conviction, and indicating whether he or she requests the appointment of counsel.  (§ 1170.95, subd. (b)(1).)

As we concluded in *Verdugo*, the Legislature intended for there to be a three-step evaluation of a section 1170.95 petition.  (*Verdugo, supra*, 44 Cal.App.5th at pp. 328, 332-333; see *Perez, supra*, 54 Cal.App.5th at p. 903.)  "If any of the required information is missing and cannot be readily ascertained by the court, 'the court may deny the petition without prejudice to the filing of another petition and advise the petitioner that the matter cannot be considered without the missing information.' (§ 1170.95, subd. (b)(2).)  [¶]  If the petition contains all required information, section 1170.95, subdivision (c), prescribes a two-step process for the court to determine if an order to show cause should issue:  'The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . .  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.'" (*Verdugo*, at p. 327; accord, *Perez*, at p. 903; *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1165 (*Nguyen*) [§ 1170.95, subd. (c), provides for two prima facie reviews]; *People v. Tarkington* (2020) 49 Cal.App.5th 892, 900-901, review granted Aug. 12, 2020,

8

S263219 (*Tarkington*); *People v. Torres* (2020) 46 Cal.App.5th 1168, 1177, review granted June 24, 2020, S262011 ["subdivisions (b) and (c) of [section 1170.95] require the trial court to make three separate determinations"]; but see *People v. Cooper* (2020) 54 Cal.App.5th 106, 123, review granted Nov. 10, 2020, S264684 [once the trial court determines the petition contains the required information, the court performs a single prima facie review, and if the defendant makes a prima facie showing of entitlement to relief, the court issues an order to show cause].)

"In determining whether the petitioner has made a prima facie showing that he or she is entitled to relief under section 1170.95, subdivision (c), '[t]he trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is eligible for relief where the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing. Just as in habeas corpus, if the record "contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner." [Citation.] However, this authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, subd. (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion . . . .'" (*Perez, supra*, 54 Cal.App.5th at pp. 903-904, quoting *People v. Drayton* (2020) 47 Cal.App.5th 965, 980; accord, *Nguyen, supra*, 53 Cal.App.5th at p. 1166.)

9

After issuing an order to show cause, the trial court must hold a hearing "to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts." (§ 1170.95, subd. (d)(1).) If a hearing is held, "[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3); see *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted Mar. 18, 2020, S260598.)[4] The prosecution has the burden of proving beyond a reasonable doubt the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).)

B.  *The Trial Court Did Not Err in Failing To Appoint Counsel Before Denying Baeza's Petition for Resentencing*

Baeza contends the trial court erred when it summarily denied his petition for resentencing without first appointing counsel because he made a prima facie showing in his petition that he falls within the provisions of section 1170.95. We agree with the People that Baeza was not eligible for relief because the jury was not instructed and therefore could not have convicted Baeza of either felony murder or murder under the natural and probable consequences doctrine.

---

[4]  The Supreme Court in *People v. Lewis* limited briefing and argument to the following issues: "(1) May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95? (2) When does the right to appointed counsel arise under Penal Code section 1170.95, subdivision (c)[?]" (Supreme Ct. Mins., Mar. 18, 2020, p. 364; *People v. Lewis, supra*, 43 Cal.App.5th 1128.)

As we explained in *Verdugo*, to determine whether the petitioner is eligible for relief (the first prima facie review), the court may examine "documents in the court file or otherwise part of the record of conviction that are readily ascertainable," including "the complaint, information or indictment filed against the petitioner; the verdict form or factual basis documentation for a negotiated plea; and the abstract of judgment." (*Verdugo*, *supra*, 44 Cal.App.5th at pp. 329-330.) We added, "The record of conviction might also include other information that establishes the petitioner is ineligible for relief as a matter of law because he or she was convicted on a ground that remains valid notwithstanding Senate Bill 1437's amendments to sections 188 and 189 (see § 1170.95, subd. (a)(3))." (*Id.* at p. 330.) Further, "[a] court of appeal opinion, whether or not published, is part of the appellant's record of conviction." (*Verdugo*, at p. 333.) We review the superior court's ruling that Baeza was ineligible for relief as a matter of law de novo. (*People v. Murillo* (2020) 54 Cal.App.5th 160, 167, review granted Nov. 18, 2020, S264978; *Perez, supra*, 54 Cal.App.5th at p. 904.)

The jury instructions given by the trial court are part of the record of conviction. (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review granted Sept. 23, 2020, S263939 (*Soto*); *People v. Edwards* (2020) 48 Cal.App.5th 666, 674, review granted July 8, 2020, S262481.) Although the jury here was instructed on aider and abettor liability, it was not instructed on either felony murder or the natural and probable consequences doctrine. As the Court of Appeal in *Soto* concluded in affirming the trial court's summary denial of the defendant's section 1170.95 petition, "[T]he jurors were not provided any instruction on which they could have found [the defendant] guilty of murder under

11

[the natural and probable consequences] doctrine.  Rather, under the instructions, the jury necessarily found Soto culpable for murder based on his own actions and mental state as a direct aider and abettor of murder."  (*Soto*, at p. 1055;[5] see *Edwards*, at p. 675 [affirming summary denial of § 1170.95 petition where jury not instructed on felony murder or the natural and probable consequences doctrine].)

Here, in the absence of instructions on felony murder or the natural and probable consequences doctrine, the jury could have convicted Baeza as either the shooter or a direct aider and abettor of the shooter, but not, as suggested by Baeza, based on a theory of liability that is no longer valid following Senate Bill 1437's amendments to sections 188 and 189.  We do not credit Baeza's averments to the contrary that he is eligible for relief because he was convicted based on a theory of felony murder or the natural and probable consequences doctrine.  (*Perez, supra*, 54 Cal.App.5th at pp. 903-904; *People v. Drayton, supra,* 47 Cal.App.5th at p. 980; *Nguyen, supra*, 53 Cal.App.5th at p. 1166.)  Although we concluded in *Baeza I, supra*, B129838 that "there was ample evidence upon which the jury could find beyond a reasonable doubt that [Baeza] shot Walker," we need not

---

[5]     The *Soto* court rejected the argument the reference to the "'natural consequences'" of an intentional act in CALJIC No. 8.11 on implied malice showed the defendant had been convicted of murder based on the natural and probable consequences doctrine, explaining, "The 'natural consequences' language in the instruction for second degree murder does not transform Soto's conviction into one for murder under the natural and probable consequences doctrine within the meaning of section 1170.95." (*Soto, supra*, 51 Cal.App.5th at p. 1059.)

12

determine that Baeza was the actual shooter for us to conclude he was ineligible for relief as a matter of law.[6]

Because Baeza failed to make the initial prima facie showing for relief under section 1170.95, subdivision (c), he was not entitled to appointed counsel or a hearing. (*Tarkington, supra*, 49 Cal.App.5th at pp. 901-902 [because the court summarily denied the petition at the first prima facie review stage, "the appointment of counsel was not statutorily required by section 1170.95"]; *Verdugo, supra*, 44 Cal.App.5th at pp. 332-333 ["If, as here, the court concludes the petitioner has failed to make the initial prima facie showing required by subdivision (c), counsel need not be appointed."]; *People v. Lewis, supra*, 43 Cal.App.5th at p. 1140 ["Given the overall structure of the statute, we construe the requirement to appoint counsel as arising in accordance with the sequence of actions described in section 1170.95 subdivision (c); that is, after the court determines that the petitioner has made a prima facie showing that petitioner 'falls within the provisions' of the statute, and before the submission of written briefs and the court's determination whether petitioner has made 'a prima facie showing that he or she is entitled to relief.'"].)

---

[6] Although the superior court denied relief based on its finding Baeza was the actual shooter, we uphold the court's ruling if supported by any legal theory. (*People v. Smithey* (1999) 20 Cal.4th 936, 972.)

13

## DISPOSITION

The order denying Baeza's petition for resentencing under section 1170.95 is affirmed.

FEUER, J.

We concur:

PERLUSS, P. J.

SEGAL, J.